EMMA E. WICKENHEISER, as General Guardian of the Person and Property of WALTER J. WICKENHEISER and HERBERT WICKENHEISER, Infants, and EMMA E. WICKENHEISER, Respondents, v. THE COLONIAL BANK and DRY DOCK SAVINGS INSTITUTION, Appellants, Impleaded with GEORGE HERRING, Otherwise Known as " JOHN GEORGE HERRING," and GEORGE HERRING, as Executor, etc., of CHARLES F. WICKENHEISER, Deceased, Defendants.

*(Supreme Court, Appellate Division, First Department, June 18, 1915.)*

BANKS—DECEDENT'S ESTATE—TRANSFER OF SAVINGS BANK DEPOSIT TO EXECUTOR ON DEMAND—PERSONAL LOAN TO EXECUTOR ON SECURITY OF PASS BOOK—WHEN NO IMPLIED TRUST IN FAVOR OF LEGATEES—FAILURE TO SHOW NEGLIGENCE OR BAD FAITH—LIEN OF LENDER IS PRIOR TO RIGHT OF LEGATEE.

Where the executor presents the surrogate's certificate appointing him as such and also a waiver from the attorney for the state comptroller to a savings bank in which the testator had a deposit and has the account represented by a new pass book transferred to his own name, the legatees after the insolvency of the executor cannot recover in an action against another bank which made a personal loan to the executor secured by an assignment of the funds represented by the pass book bearing his name, on the theory that the funds were impressed with a trust in favor of the unpaid legatees, there being no proof showing bad faith on the part of the bank which made the loan.

Where the lending bank, being made codefendant with the bank issuing the pass book, interposed no answer asking relief against its codefendant, and the latter merely prayed that the rights of the parties to the fund in question be determined, the decision should be limited to the determination of that question, and no relief can be given in favor of the lender against the bank issuing the pass book.

As an executor as such takes unqualified legal title to all the personal property of his testator not specifically bequeathed, and a qualified title to that which is so bequeathed, the bank of deposit was justified in issuing to the executor a pass book in his own name instead of paying over to him the actual cash, and hence the legatees as against it are only entitled to a judgment impressing a trust in their favor upon the balance of such account remaining after the lien of the bank which made the loan has been paid, there being no proof of bad faith on the part of either institution.

APPEAL by the defendants, The Colonial Bank and another, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 4th day of June, 1913, upon a decision of the court after a trial at the New York Special Term.

The defendant, The Colonial Bank, appeals from all of said judgment except that portion which dismisses the complaint as against it.

Jesse S. Epstein, for the appellant The Colonial Bank.

Frank M. Tichenor, for the appellant Dry Dock Savings Institution.

Artemas B. Smith, for the respondents.

Dowling, J.—Charles F. Wickenheiser died at the city of New York on January 26, 1908, leaving a will thereafter duly admitted to probate, whereof George Herring, his brother-in-law, was executor, to whom letters testamentary were issued February 27, 1908. By his will, after the payment of $2,000 to his mother, all the residue of his property was left to his widow and two children by a prior marriage, to be divided between them equally. Forming part of his estate was a deposit of $2,494.90 in the Dry Dock Savings Institution. On March 2, 1908, four days after the letters were issued to him, Herring presented the pass book of the deceased, numbered 440,015 and representing said account, to said institution, surrendered it and opened a new account in his own name, represented by pass book No. 489,054, wherein he was credited with the amount of money that remained in decedent's account ($2,494.90) and with all interest thereon down to the date of such surrender, the new deposit including interest allowed on the decedent's account from January 1, 1908, which would not.

have been credited upon a new account but was only credited because it was a transfer of an old account. At the time that the transfer was made he presented to the institution the surrogate's certificate of his qualification as executor, and also a waiver from the attorney for the State Comptroller. It was upon these papers that the transfer was made. On the next day, March third, he called at the Colonial Bank, wherein he was a depositor, and obtained a demand loan for $1,000, giving an assignment of the new pass book in his name in the institution as security, and on October 28, 1908, he again obtained a loan from the same bank on the same security. Both of these loans were repaid by him January 3, 1910, whereupon the pass book was returned to him. Thereafter the Colonial Bank made loans of $1,000 to Herring, secured by his pass book in the Union Square Savings Bank on March 18, 1900 and November 26, 1909, repaid respectively April 4, 1910, and January 3, 1910. On December 15, 1909, the bank again loaned him $1,000 payable on demand, secured by the pass books in the institution and the Union Square Bank, and the loan was repaid on December 24, 1909. On March 16, 1911, his loans having been repaid and the bank books being in his possession, the Colonial Bank loaned Herring $2,000, and he again delivered to it the pass book, with an assignment of the moneys due him by the Dry Dock Savings Institution as evidence by said book and also a collateral note for $2,000 and a draft on the Dry Dock Savings Institution chargeable to said account. Notice of the assignment to the extent of $2,000 was given the Dry Dock Institution, which acknowledged receipt of it the same day. No part of this loan has been repaid. Herring having rendered an account of his proceedings as executor, a decree was made by the Surrogate's Court on May 25, 1911, settling and allowing the same, whereby a balance was found to be due by him of $22,379.75, including the amount payable to the widow ($3,186.03) and to each of

his two sons ($9,281.03). The legacy to decedent's mother has been paid by the executor. The sums due the sons (who were still minors) were directed to be paid to their mother on her furnishing certain bonds, which she has done, and she has been appointed their general guardian. Demand was made upon the executor to pay the moneys so directed to be paid, with which he has failed to comply, and a transcript of the decree having been duly filed in the county clerk's office of New York county, three certain writs of execution against the property of Herring for the collection of said respective amounts were issued to the sheriff of New York county on July 3, 1911, and upon them was realized the sum of $10,000, the balance still unpaid being $11,748.10. Herring is insolvent. Plaintiff suing on her own behalf and as general guardian of the two sons, has recovered judgment upon the theory that as the funds in the Dry Dock Savings Institution were the property of her husband's estate the unpaid legatees thereof are entitled to have a trust in their favor impressed upon those funds prior to the claim of the Colonial Bank, which loaned upon the faith of the account. The judgment decrees that the sum represented by the pass book is held by the Dry Dock Savings Institution in trust for the use and benefit of plaintiff and the sons, and the institution is to account to them therefor, payment thereof to be applied on account of the several sums of money decreed to be paid them by the Surrogate's Court. The complaint has been dismissed as against the Colonial Bank but without prejudice to its right to commence an action at law against the institution. The Colonial Bank has not served a copy of its answer upon the institution, nor did its answer as served upon the plaintiff ask for any judgment against the institution, nor was any issue presented by the pleadings as between the two banks. The answer of the institution asked that the court make such judgment herein as the facts in the case will warrant, it holding the said money to the credit of account

number 489,054 until the judgment of the court herein. No question has been raised either upon the trial or upon this appeal as to the right of the legatees to bring such an action as this instead of having suit brought on behalf of the estate by a successor in interest of the recreant executor. The record herein discloses absolutely no testimony tending to show bad faith on the part of the Colonial Bank. It is claimed that the fact that Herring sought a loan on his savings bank account only four days after his pass book showed he had opened it should have put the Colonial Bank upon its guard. But there is no proof that the transaction was an unusual one or that any other circumstances were present to rouse the bank's suspicions. Had it inquired it could have learned only that Herring did have such an account there as he represented he had. They were bound to go no further than that. There is no finding nor any proof warranting one that the Colonial Bank acted otherwise than in good faith or that it had notice, actual or constructive, that the pass book on which it loaned its money represented trust funds. The complaint set forth that the bank had such knowledge when it received the book, but there is not a scintilla of proof in support thereof. Therefore, even conceding that the bank account was only a chose in action, the Colonial Bank, being a *bona fide* purchaser for value, had a valid title. (Moore v. Metropolitan National Bank, 55 N. Y. 41; Greene v. Warnick, 64 id. 220; Spencer v. Weber, 163 id. 493.) Therefore the dismissal as to it was proper. And in the absence of any prayer for relief by it as against the institution, it was not entitled to an affirmative judgment as against the latter save in so far as it might be able to establish a claim to or upon the account in question, for the main issue before the court was the right of plaintiffs to have a trust impressed in their favor upon the fund in question. But, inasmuch as the institution prayed to have the rights of the parties in the fund in question determined, the court had the right to so deter-

mine them, but to give no further relief against the institution in favor of the bank.

The plaintiffs not being entitled to have a trust in their favor impressed upon the deposit in question, which shall take precedence over the Colonial Bank's claim, what are their rights as against the Dry Dock Savings Institution? They are not suing here upon the theory of negligence upon its part, but simply upon the ground that the deposit in question represents funds of the estate which should be applied to the discharge of their claims against it. Against this contention neither appellant seeks to argue, save in so far as the Colonial Bank contends (and as we have indicated, properly) that such fund is first chargeable with the amount of its own advance to Herring. The institution had the right to transfer the account of Herring individually, upon his demand that it do so and the production of the necessary documents establishing his title. "An executor, as such, takes the unqualified legal title of all personalty not specifically bequeathed, and a qualified legal title to that which is so bequeathed." (Blood v. Kane, 130 N. Y. 514.) "The executor is the owner of the personal property of the testator; the absolute title vests in him, and he possesses the *jus disponendi* in its full force. The honest purchaser is under no duty to see that the moneys are faithfully applied by the executor." (Leitch v. Wells, 48 N. Y. 595.) Being bound to transfer the funds of the estate in its possession to Herring upon his demand, it was immaterial whether they paid him over the cash or allowed him to open up a new account in his own name. Having turned over to him the amount represented by the pass book, and concededly not having profited in any way by the advances made by the Colonial Bank to Herring, no tenable theory is suggested for its liability, and no claim in negligence is predicated upon its failure to advise the Colonial Bank of the fact that the Herring account represented trust funds, or to notify the legatees of the estate of the fact

that the executor was borrowing money upon the account. The only relief to which plaintiffs can be entitled in this action, therefore, is a judgment impressing a trust in their favor upon the balance of the Herring account in the institution after the lien of the Colonial Bank has been paid. The judgment appealed from should be modified (1) by awarding the Dry Dock Savings Institution, which was merely a stakeholder, costs of the trial below, and striking out the direction for costs against it; (2) by decreeing that the Colonial Bank has a lien on the account in question to the extent of the amount proved, $2,192.35, with interest from the date of the trial, February 25, 1913; (3) by decreeing that the balance, if any, of the account is impressed with a trust in favor of plaintiffs. Costs of the appeal are awarded to both appellants against resopndents. The following findings of fact are reversed, as not warranted by the evidence: XV, XVI, XVII, XXII, XXIV, and the conclusions of law numbered I to V, inclusive. For the finding of fact numbered XII, which is reversed, as should be, substituted the institution's proposed finding of fact numbered I, which correctly states the facts as warranted by the evidence. The following findings of fact proposed by the Colonial Bank are found: sixth to twenty-fifth, inclusive; also its conclusions of law numbered first and third.

INGRAHAM, P. J., McLAUGHLIN, LAUGHLIN and HOTCHKISS, JJ., concurred.

Judgment modified as directed in opinion, and as modified affirmed, with costs to both appellants against respondents. Order to be settled on notice.