In the Matter of the Estate of JAMES BANCROFT BOOTH, Deceased.

Surrogate's Court, Kings County, February 11, 1931.

*William E. Cook*, for the executors.

*Harry M. Peyser*, for the State Tax Commission.

WINGATE, S. This is an appeal from the *pro forma* order entered November 29, 1930, fixing transfer tax upon the estate of this decedent on the ground that the appraiser improperly included in the assets of the estate a dividend upon certain stock of Bristol-Myers Company, a New York corporation, amounting to $45,666.67. The pertinent facts disclose that the dividend was declared by the company on September 30, 1929, payable on October 9, 1929, to shareholders who should be such of record on October 7, 1929. The decedent died at seven A. M. on the last named date.

In essence the executor contends that the dividend did not accrue until the close of business on October 7, 1929, at which time title to the stock had vested in the executor and consequently the dividend became income in his hands and not taxable principal.

On primary legal principles "An executor, as such, takes the unqualified legal title of all personalty not specifically bequeathed,

and a qualified legal title to that which is so bequeathed. He holds not in his own right, but as a trustee, for the benefit (1) of the creditors of the testator, and (2) of those entitled to distribution under the will, or if not all bequeathed, under the Statute of Distributions " (*Blood* v. *Kane*, 130 N. Y. 514, 517), or as stated in another way: " The executor is the owner of the personal property of the testator; the absolute title vests in him, and he possesses the *jus disponendi* in its full force." (*Leitch* v. *Wells*, 48 N. Y. 585, 595.) To like effect see *Wickenheiser* v. *Colonial Bank* (168 App. Div. 329, 333); *Milliner* v. *Morris* (219 id. 425, 427).

The question for determination, therefore, resolves itself into one of whether or not this decedent at seven A. M. on October 7, 1929, was the owner of the dividend declared on September 30, 1929, but which was not actually payable until October 9, 1929. In *Matter of Kernochan* (104 N. Y. 618) it appeared that a dividend was declared on April 14, 1881, payable May 2, 1881. The books of the corporation closed for transfer at two P. M. on April 20, 1881, and the decedent died at ten minutes past eleven on the same night. In determining that the dividend was a part of the principal of the estate the court said (at p. 624): " As soon as the profits on shares of stock are ascertained and declared, they cease to be the property of the company, and the owner of the shares becomes entitled to the dividend. It at once forms part of his estate. The fact that they are made payable at a future time is immaterial. The dividend to which the life tenant may be entitled as income can only be that which the company declares after that relation is acquired. In this case the dividend represented profits, or income, but had become a debt before the will took effect. Mrs. Marshall was entitled to income merely."

The general subject of the rights of stockholders of record to dividends declared is fully discussed and passed upon by the Court of Appeals in *Hopper* v. *Sage* (112 N. Y. 530) in which the court says (at p. 533): " It has been held a number of times in this court that when a dividend is declared it belongs to the owner of the stock at that time, but that until such declaration the profits form part of the assets, and an assignment by a stockholder before such declaration carries with it his proportional share [534] of the assets, including all undeclared dividends. This is so in regard to dividends declared, but which are payable at a future time, and such dividends belong to the owner of the stock when declared. The declaration of the dividend is in legal contemplation a separation of the amount thereof from the assets of the corporation, whieh holds such amount thereafter as the trustee of the stockholder at the time of the declaration of the dividend. In the

absence, therefore, of any provision in a contract of sale and purchase of stock outside of and not subject to the rules of the Stock Exchange, the law declares that such a contract gives the dividends to the owner of the shares when the dividends were declared. This rule was announced in *Boardman* v. *Lake Shore & M. S. Railway Co.* (84 N. Y. 157), *Jermain* v. *Same Defendant* (91 id. 483, 492) and in *Matter of Kernochan* (104 id. 618)."

The general rights of stockholders are further discussed in an illuminating manner in *Ford* v. *Snook* (205 App. Div. 194, 196) as follows: " The provision in a resolution declaring a dividend, relative to its being payable to stockholders of record on a certain day is intended to serve the convenience of the corporation and to protect it in paying to the persons who appear on its books, where it has no notice of transfer. It does not affect title to the dividend. (*Brisbane* v. *D., L. & W. R. R. Co.*, 94 N. Y. 204; 14 C. J. 754, 819.)

" The declaration of a dividend creates no contractual relation between the corporation and the stockholder. Rather it creates a debt in favor of the latter against the corporation. (*Ehle* v. *Chittenango Bank*, 24 N. Y. 548; *Searles* v. *Gebbie*, 115 App. Div. 778, 780; affd., 190 N. Y. 533; *Cogswell* v. *Second National Bank*, 78 Conn. 75; affd., *sub nom. Jerome* v. *Cogswell*, 204 U. S. 1.)

" When a dividend has been declared out of the earnings of a corporation, such dividend becomes the property of the owners of the shares of stock, no matter whether payable immediately or at a future time. (*Brundage* v. *Brundage*, 60 N. Y. 544; *Matter of Kernochan*, 104 id. 618; *Hopper* v. *Sage*, 112 id. 530; *Robertson* v. *DeBrulatour*, 188 id. 301; *Rowe* v. *White*, 112 App. Div. 688; affd., 189 N. Y. 523; *Hill* v. *Newichawanick Co.*, 8 Hun, 459; affd., 71 N. Y. 593; *Warner* v. *Watson & Gibson*, 4 Misc. Rep. 12.) Before a dividend'is declared, the intangible right of the stockholder to share in the earnings of the corporation is a mere incident to the stock and passes with it on a sale. But when a dividend is declared it constitutes a property interest separate from the stock and forms no part of it, and on a sale does not pass as an incident to it. (*Wheeler* v. *Northwestern Sleigh Co.*, 39 Fed. Rep. 347.) "

It seems apparent that the executor in the case at bar has confused the actual rights of the stockholder with the custom which is said to prevail upon the New York Stock Exchange and which is said to provide that a sale of stock prior to the closing of the transfer books of the corporation carries with it rights in previously declared dividends, whereas a sale subsequent to such time leaves the dividend in the hands of a seller. Of course, no custom or usage of such a nature can arise in the instant proceeding, since the transfer here was purely by operation of law, and as noted in

*Hopper* v. *Sage* (*supra,* at p. 535): " Usage and custom cannot be proved to contravene a rule of law * * *.

" * * * This is not a case where, by the terms of the contract made between members of the Stock Exchange, its rules and regulations are to control in its interpretation and obligations. Nor was it made under such circumstances that those rules and regulations could have any legal effect."

It must be apparent, therefore, that under existing rules of law a stockholder from the moment of the declaration of a dividend by a corporation is possessed of two rights, *first,* the right to the stock as such and, *second,* a right as creditor to the dividend which has been declared by the corporation. On familiar principles this debt by reason of a declared dividend is an asset of the testator at the time of his death, the nature of which is in no wise changed by its collection or payment to the executor subsequent to the decease.

It follows that the action of the transfer tax appraiser in this proceeding in assessing a tax on the amount of this dividend was correct and the appeal must be dismissed.